# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JEFFERY LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0473-WS-B |
| | ) |
| JEFFERSON S. DUNN, Commissioner, | ) |
| Alabama Department of Corrections, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on Defendants' Motion to Dismiss (doc. 19). The Motion has been the subject of extensive briefing and is now ripe for disposition.

**I.     Relevant Background.**

Plaintiff, Jeffery Lee, is an Alabama death row inmate who was convicted in 2000 of three counts of capital murder in connection with the shotgun killings of Jimmy Ellis and Elaine Thompson in a pawnshop near Orrville, Alabama. In October 2000, a Dallas County Circuit Court judge sentenced Lee to death. The Alabama Court of Criminal Appeals affirmed Lee's convictions and sentences in June 2003, and subsequent petitions for rehearing and for writ of certiorari in both the Alabama Supreme Court and the United States Supreme Court were denied, such the Lee's direct appeals concluded in 2004. Lee's Rule 32 proceedings in state court lasted from February 2005 through October 2009, and his § 2254 proceedings in federal court commenced in October 2010 and concluded with the denial of certiorari by the Supreme Court in March 2014. *See Lee v. Thomas*, 134 S.Ct. 1542, 188 L.Ed.2d 557 (2014). All such appeals and collateral attacks were unsuccessful.[1] At present, the State of Alabama has not set an execution date for Lee.

---

[1]     In April 2016, Lee filed a second Rule 32 petition in the Dallas County Circuit Court, wherein he alleged that Alabama's capital sentencing scheme is unconstitutional under *Hurst v. Florida*, --- U.S. ----, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016). The Circuit Court
(Continued)

On September 8, 2016, Lee filed the instant Complaint (doc. 1) pursuant to 42 U.S.C. § 1983. In this action, Lee asserts a series of constitutional claims challenging the method of his execution. As his First Cause of Action, Lee maintains that Alabama's three-drug lethal injection protocol "creates a substantial risk of excruciating and cruel pain to Mr. Lee because … there is a substantial likelihood that midazolam will fail to render Mr. Lee unconscious and insensate from the excruciating pain and anguish caused by the second and third drugs." (Doc. 1, ¶ 88.) Lee further alleges that "[t]he State's lack of an effective consciousness check exacerbates the risk that Mr. Lee will experience excruciating pain," that "[r]eadily available alternatives exist that the State could employ instead of its current three-drug lethal injection protocol," and that "[r]eadily available alternatives exist that the State could employ instead of its current, ineffective consciousness check." (*Id.*, ¶¶ 89-91.) On that basis, Lee alleges that "[i]f the State's three-drug protocol is used to execute Mr. Lee, then Mr. Lee will be subject to cruel and unusual punishment in violation of the Eighth Amendment." (*Id.*, ¶ 94.)

As his Second Cause of Action, Lee brings a Fourteenth Amendment equal protection challenge. In this claim, Lee asserts that the State's lethal injection protocol burdens his right to be free from cruel and unusual punishment because Alabama replaced two drugs in its protocol without updating its consciousness assessment. As pleaded in the Complaint, Lee's "personal and medical history substantially increases the risk" of excruciating pain, and the State's procedures are inadequate to guard against such a risk. (*Id.*, ¶ 99.) For his Third Cause of Action, Lee raises a due process claim predicated on "[t]he State's refusal to disclose material information about its new lethal injection protocol," which Lee says has the effect of "depriving him of notice and a meaningful opportunity to challenge the manner" of his execution. (*Id.*, ¶ 105.)

The State has now moved to dismiss the Complaint in its entirety on grounds of timeliness and failure to state a cognizable claim.

---

dismissed the petition in August 2016 and the Alabama Court of Criminal Appeals affirmed that ruling in February 2017. *See Lee v. State*, --- So.3d ----, 2017 WL 543171 (Ala.Crim.App. Feb. 10, 2017) (concluding that *Hurst* did not establish a new rule, but merely applied the *Ring* holding to a new set of facts, such that Lee's Rule 32 petition was procedurally barred pursuant to Rule 32.2, Ala.R.Crim.P.).

II. **Analysis.**

    A. *Whether the Complaint is Time-Barred.*

        1. *Governing Legal Standard.*

Lee's § 1983 challenges to the method of execution are subject to a two-year limitations period. *See, e.g., McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) ("All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. … Callahan's claim was brought in Alabama, where the governing limitations period is two years.") (citations omitted). Circuit law teaches that "an inmate's method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or *substantially changed* execution protocol." *Powell v. Thomas*, 643 F.3d 1300, 1303 (11th Cir. 2011) (citation omitted).[2]

There can be no question that Lee's state review concluded back in 2004, well outside the two-year limitations period governing his § 1983 claims. Accordingly, the timeliness analysis in this case hinges on a determination of whether Lee became "subject to a new or substantially changed execution protocol" by the State of Alabama within two years prior to the September 2016 filing of his method-of-execution Complaint. *See Arthur v. Thomas*, 674 F.3d 1257, 1259 (11th Cir. 2012) ("In order to defeat Alabama's statute of limitations defense, Arthur must show that he filed his § 1983 complaint within two years of a significant change in Alabama's method of administering lethal injections."); *see generally Valle v. Singer*, 655 F.3d 1223, 1229 (11th Cir. 2011) ("Thus, the Court must consider whether Valle has alleged facts supporting a conclusion that Florida has changed or substantially altered its execution protocol."). In this context, "a 'substantial change' is one that 'significantly alter[s] the method of execution.'" *Brooks v. Warden*, 810 F.3d 812, 822 (11th Cir. 2016) (citation omitted).

---

    [2] *See also Brooks v. Warden*, 810 F.3d 812, 822 (11th Cir. 2016) ("It is well settled that a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol.") (citation and internal quotation marks omitted); *Gissendaner v. Commissioner, Georgia Dep't of Corrections*, 779 F.3d 1275, 1280 (11th Cir. 2015) (similar); *Valle v. Singer*, 655 F.3d 1223, 1229 (11th Cir. 2011) (similar).

-3-

### *2. Whether Midazolam is a Substantial Change.*

Plaintiff insists that the requisite "substantial change" may be found in Alabama's modification of its three-drug protocol to change the initial drug from pentobarbital to midazolam hydrochloride ("midazolam"). The Complaint pleads as follows:

> "In September 2014, the State of Alabama revealed for the first time … that the Alabama Department of Corrections had adopted an entirely new lethal-injection protocol to be used in future executions …. The new lethal-injection protocol replaced two out of three drugs used in the previous three-drug protocol.
> \* \* \*
> The first of these two new drugs is midazolam. Before the new protocol was adopted, midazolam had never before been used in executions in Alabama."

(Doc. 1, ¶¶ 3-4.)[3] This timeline of events, driven by the lack of availability of pentobarbital (which Alabama had previously designated as the first drug in its lethal injection protocol), has been recognized by the Eleventh Circuit. *See Grayson v. Warden*, --- Fed.Appx. ----, 2016 WL 7118393, \*2 (11th Cir. Dec. 7, 2016) ("Pentobarbital became unavailable in 2014. … Consequently, Alabama announced in September 2014 that it would begin using midazolam as the first drug in its lethal injection protocol.") (citations omitted).

Defendants counter that the substitution of midazolam for pentobarbital in Alabama's three-drug protocol has been held by binding authorities not to constitute a "substantial change" for limitations purposes in § 1983 actions challenging the method of execution. *See, e.g., Brooks*, 810 F.3d at 823-24 (concluding that "we cannot say that the 2014 switch to midazolam triggered a new statute-of-limitations period" because plaintiff had not "established a substantial likelihood that the substitution of midazolam for pentobarbital was a 'substantial change' to

---

[3] For purposes of evaluating defendants' Motion to Dismiss, the Court accepts as true all well-pleaded factual allegations of the Complaint, and draws all reasonable inferences in Lee's favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint"). That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Almanza v. United Airlines, Inc.*, 851 F.3d 1060 (11th Cir. 2017) ("On a Rule 12(b)(6) motion to dismiss, the Court does not accept as true unwarranted deductions of fact."). The Court's analysis also proceeds in recognition of the principle that "[t]o survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations to state a claim to relief that is plausible on its face." *Moore v. Grady Memorial Hospital Corp.*, 834 F.3d 1168, 1171 (11th Cir. 2016) (citation and internal quotation marks omitted).

Alabama's protocol, or that it 'significantly alter[ed] the method of execution'"); *Grayson*, 2016 WL 7118393, at *4 ("As we recognized in *Brooks*, the Supreme Court and this Court have indicated that the substitution of midazolam for pentobarbital does not significantly alter a three-drug lethal injection protocol because, similar to pentobarbital, midazolam render[s] a prisoner unconscious and insensate during the remainder of a three-drug procedure.") (citations and internal quotation marks omitted).[4]

Lee's position is that the State's inclusion of midazolam in place of pentobarbital in its three-drug protocol is a substantial change for timeliness purposes. In his Complaint, he alleges that it is a substantial change because "[a]s a benzodiazepine, midazolam fits into an entirely different class of drugs than sodium thiopental or pentobarbital, both of which are barbiturates." (Doc. 1, ¶ 11.) The Complaint goes on to state that this distinction matters because

> "Midazolam is not an analgesic, and it does not suppress responses to noxious stimuli. Midazolam's efficacy has a much shorter duration than sodium thiopental or pentobarbital. Unlike sodium thiopental or pentobarbital, … midazolam has not been approved by the Food and Drug Administration ('FDA') for use as a stand-alone anesthetic. … Midazolam differs significantly and materially from barbiturates, and is more akin to Valium or Xanax."

(*Id.*, ¶ 39.) Plaintiff contends that "[e]ven at high doses, midazolam will not induce general anesthesia sufficient to prevent an individual from feeling pain from … the second and third drugs in the State's lethal injection protocol." (*Id.*, ¶ 40.) On the strength of these factual allegations, Lee maintains that the Complaint is adequate to overcome a Rule 12(b)(6) hurdle as to timeliness and entitle him to discovery and an evidentiary hearing on the issue of whether the September 2014 modification of Alabama's three-drug protocol to utilize midazolam rather than pentobarbital constitutes a "substantial change" that started anew the two-year limitations clock for his § 1983 claims.

The State responds that Lee's allegations concerning midazolam are inadequate as a

---

[4] *See generally Glossip v. Gross*, --- U.S. ----, 135 S.Ct. 2726, 2739-40, 192 L.Ed.2d 761 (2015) ("numerous courts have concluded that the use of midazolam as the first drug in a three-drug protocol is likely to render an inmate insensate to pain that might result from administration of the paralytic agent and potassium chloride"); *Pardo v. Palmer*, 500 Fed.Appx. 901, 904 (11th Cir. Dec. 11, 2012) ("Because Pardo filed his 'method of execution' challenge outside of the running of the statute of limitations, and because we have explicitly held that changes to the first and second drugs in the three-drug sequence do not constitute a substantial change, … Pardo's claim comes too late.") (citations and internal quotation marks omitted).

matter of law, and that binding authorities have rejected factual allegations comparable to Lee's for timeliness purposes. Of course, the Eleventh Circuit has cautioned that "[w]hether a significant change has occurred in a state's method of execution is a fact-dependent inquiry." *Arthur*, 674 F.3d at 1260; *see also Grayson*, 2016 WL 7118393, at *5 ("The question whether a significant change has occurred in a state's execution method is generally a fact-dependent inquiry.") (citation omitted). That does not imply, however, that a § 1983 plaintiff overcomes a limitations defense on a motion to dismiss merely by pleading factual allegations about a modification of the execution protocol that the appeals court has previously deemed inadequate to constitute a substantial change. To the contrary, the Eleventh Circuit has expressly rejected the argument that courts cannot deem a complaint "untimely unless [the plaintiff] is first given an opportunity to seek discovery in support of her allegations that [the State] has substantially altered its lethal injection protocol." *Gissendaner*, 779 F.3d at 1282 n.8. Rather, "a court may dismiss a complaint as untimely – without an evidentiary hearing or discovery – if the allegations and evidence presented are 'materially the same' as those presented in a previous case in which the denial of relief was affirmed." *Id.*; *see also Mann v. Palmer*, 713 F.3d 1306, 1313-14 (11th Cir. 2013) (rejecting notion that "every inmate who files a complaint that challenges the use of pentobarbital is entitled to an evidentiary hearing to determine whether the substitution of pentobarbital is a substantial change in the method of execution," and explaining that if the allegations in a pleading are "materially the same" as those presented in an earlier case in which the denial of relief was affirmed, then "the district court would have been obliged to dismiss [the] complaint as untimely"); *Grayson*, 2016 WL 7118393, at *5 ("Smith's allegations concerning midazolam are materially indistinguishable from the allegations that we rejected as untimely in *Brooks*. As such, an evidentiary hearing was not required for the district court to rule on the timeliness issue in this case.").

In light of the foregoing, the critical question is whether Lee's factual allegations regarding the substitution of midazolam for pentobarbital in Alabama's lethal injection protocol are "materially the same" as those in previous decisions in which the Eleventh Circuit or the Supreme Court have found no substantial change in the method of execution. The State argues that this question must be answered affirmatively because Lee's allegations concerning midazolam do not differ materially from those presented in *Grayson* and *Brooks*, among others. Confronted with that assertion, Lee fails to identify any respect in which the factual allegations

in his Complaint as they relate to midazolam being a substantial change in Alabama's lethal injection protocol differ from those considered by controlling authorities that have concluded that switching to midazolam was not a substantial alteration that might trigger a new limitations period.[5] Lee states in conclusory terms that he "has asserted sufficient facts to allow him to proceed forward with discovery and a hearing" on the issue of whether midazolam is a substantial change; however, he does not identify those facts or even attempt to distinguish his factual allegations from those the Eleventh Circuit has pronounced inadequate to establish that the substitution of midazolam for pentobarbital in September 2014 significantly altered Alabama's lethal injection protocol.[6]

---

[5] At best, Lee relies on a pair of unpublished district court decisions from 2015 for the proposition that "the question of whether Alabama's substitution of midazolam into its three-drug protocol is a significant change cannot be resolved on a motion to dismiss without an opportunity for discovery and a hearing." (Doc. 21, at 7.) But this is not a correct statement of law in the Eleventh Circuit, as reflected in the *Brooks / Gissendaner / Mann / Grayson* line of cases.

[6] Insofar as Lee might be relying on the Complaint's factual allegations concerning Alabama's execution of Christopher Brooks on January 21, 2016 (*see* doc. 1, ¶¶ 54-63) to show that midazolam was a substantial change, such an argument fails because the Brooks allegations are not materially distinguishable from those regarding other prior executions known to and considered by the Eleventh Circuit in timeliness analyses in earlier cases. Plaintiff concedes the point repeatedly in his pleadings and briefs. (*See* doc. 1, ¶¶ 4 (explaining that before Alabama adopted midazolam, it had been used in other states "where it was widely reported that the executed inmates were not rendered fully unconscious by the delivery of midazolam"), ¶ 54 (citing "four recent botched executions in which … midazolam failed to adequately anesthetize the inmate," consisting of the Brooks execution and 2014 executions in other states); doc. 21, at 13 ("The botched execution of Christopher Brooks is only one in a series of gruesome events in states that have experimented with midazolam in a multiple-drug execution protocol.").) If Lee is not entitled to discovery or an evidentiary hearing for the "substantial change" timeliness issue based on what he calls botched executions involving midazolam in 2014 (and he plainly is not, pursuant to *Brooks* and *Grayson*), then nothing about the January 2016 Brooks execution (which plaintiff says is just the latest in a series of similar events) would constitute the kind of materially different factual allegation that might warrant discovery or an evidentiary hearing on the "substantial change" issue notwithstanding the rulings in cases such as *Brooks* and *Grayson*. Thus, the Brooks allegations do not affect the timeliness analysis. Besides, the Eleventh Circuit has opined that the circumstances of Brooks' execution do not establish a substantial change that might restart the § 1983 limitations clock. *See Grayson*, 2016 WL 7118393, at *7 ("the fact that Brooks opened one eye during his execution, without more, falls far short of a showing of either a substantial risk of serious pain or a significant change in Alabama's method of execution").

The Court concludes that Lee's Eighth Amendment claim predicated on Alabama's use of midazolam in its three-drug execution protocol is untimely. The Complaint is devoid of facts showing that the substitution of midazolam for pentobarbital constitutes a substantial change in Alabama's method of execution that might restart the long-expired limitations clock; rather, Lee has relied on factual allegations that are materially the same as those presented in previous cases in which appellate courts have found no substantial change. Under the circumstances, neither discovery nor an evidentiary hearing on the "substantial change" issue is warranted. This claim is time-barred on its face.

### 3. *Substantial Change and the Consciousness Check.*

As noted, another component of Lee's Eighth Amendment claim is that "[t]he State's lack of an effective consciousness check exacerbates the risk that Mr. Lee will experience excruciating pain when the second and third drugs are administered to him." (Doc. 1, ¶ 89.) Likewise, Lee's equal protection cause of action rests in part on the State's consciousness assessment, as the Complaint alleges, "The State's decision to change its lethal injection protocol without updating its consciousness test has no rational basis nor is it narrowly tailored to a compelling governmental interest." (*Id.*, ¶ 100.)[7] The State moves for dismissal of these claims on timeliness grounds, as well. In so doing, the State maintains, and cites authority for the proposition, that Alabama's consciousness assessment has been unchanged since it was first adopted in 2007, such that Lee was required to raise any challenge to same by no later than 2009 in order to comply with the two-year limitations period.[8]

---

[7] The equal protection claim includes various other allegations; indeed, Lee clarifies that this cause of action addresses both "the State's use of an inadequate consciousness assessment" and "the switch to the new three-drug protocol." (Doc. 21, at 23.) To the extent that the equal protection claim turns on the State's substitution of midazolam for pentobarbital in September 2014, the timeliness analysis is identical to that set forth for the Eighth Amendment claim and will not be reproduced here. The timeliness of the equal protection cause of action as it relates to the consciousness assessment will be evaluated separately.

[8] *See Grayson*, 2016 WL 7118393, at *7 ("Smith does not dispute that Alabama implemented the consciousness assessment procedure in 2007. … He does not allege that the method of assessing consciousness, or the training and qualifications of the correctional staff who perform the assessment, have changed in any way since the procedure was implemented. Thus, all of Smith's allegations concerning Alabama's consciousness assessment procedure could have been raised in 2007 and were time-barred as of 2009.").

In opposing the State's limitations defense, Lee does not assert that Alabama has in fact altered its consciousness assessment procedure at any time since 2007. Instead, he posits that "the State's failure to adapt its consciousness assessment to its introduction of midazolam to its execution protocol is a substantial change." (Doc. 21, at 10.) He identifies no case authority anywhere endorsing the paradoxical reasoning that, for limitations purposes, a consciousness test can substantially change by staying the same. At any rate, the "substantial change" that Lee would necessarily be relying on in advancing such a theory would be the substitution of midazolam for pentobarbital; however, this Court (and the Eleventh Circuit) has already held that the midazolam modification is not a "substantial change" for limitations purposes. Lee cannot bootstrap an untimely consciousness-assessment challenge onto an untimely midazolam challenge and somehow obtain a timely claim. Stated differently, because the State's use of midazolam does not constitute a substantial change to the execution protocol, the State's failure to revamp the consciousness assessment to account for the use of midazolam likewise cannot constitute a substantial change to the execution protocol. These claims are time-barred because Lee could have raised them as far back as 2007, when Alabama first added the consciousness assessment to its protocol as a procedural safeguard. The two-year limitations period has long since expired. *See, e.g., Grayson*, 2016 WL 7118393, at *7 ("Smith's allegations concerning Alabama's consciousness assessment procedure could have been raised in 2007 and were time-barred as of 2009. … Brooks's execution did not involve any change, much less a significant change, to Alabama's consciousness assessment procedure that Smith challenges in his § 1983 claim.").[9]

### 4. *Due Process Claim.*

As his Third Cause of Action, Lee asserts a due process claim predicated on what he terms "[t]he State's refusal to disclose material information about its new lethal injection protocol, including the reasons for its decision to switch to midazolam and to retain the same consciousness assessment." (Doc. 1, ¶ 105.) Plaintiff alleges that such information "is critical to

---

[9] *See also Grayson v. Dunn*, 2017 WL 1243156, *4 (M.D. Ala. Mar. 31, 2017) ("The court's analysis of Smith's consciousness assessment claim is equally applicable to Consolidated Plaintiffs' identical claim. That claim is time-barred. Neither the alleged events occurring at the Christopher Brooks execution in January 2016, nor the alleged events occurring at the Smith execution in December 2016 will revive that claim.").

a determination of the constitutionality of [the State's] intended actions as applied to Mr. Lee." (*Id.*, ¶ 106.)

The State persuasively argues that this claim is also time-barred. Indeed, the Eleventh Circuit has held that due process claims relating to Alabama's "secrecy" concerning its method of execution accrued in 2002, when the State first adopted a lethal injection procedure and cast aside the electrocution method. *See, e.g., Powell v. Thomas*, 643 F.3d 1300, 1305 (11th Cir. 2011) ("Powell could have challenged the ADOC's 'secrecy' surrounding the method of execution beginning July 31, 2002, as the facts supporting this cause of action should have been apparent to any person with a reasonably prudent regard for his rights.") (citation and internal quotation marks omitted). The State's substitution of midazolam for pentobarbital in its three-drug lethal injection protocol does not revive this kind of due process attack, and does not restart the two-year limitations clock. *See id.* ("Powell fails to show how his claim about the secrecy surrounding the ADOC's recent change in lethal injection protocol was revived by the ADOC's 2011 switch in drugs."); *Hunt v. Myers*, 2015 WL 1198688, *3 (M.D. Ala. Mar. 16, 2015) (as of July 2002, "Hunt could have challenged the secrecy surrounding Alabama's lethal injection protocol and the State's refusal to disclose to him all details about the protocol that will be used in his execution, but he waited over twelve years to do so …. Those claims fall well outside of the two-year statute of limitations, and the fact that two of the drugs in the protocol were changed in September 2014 does not … otherwise make those claims timely."). Confronted with these authorities, Lee does not advance any argument suggesting that his due process claim is timely or distinguishing his claims from the binding, on-point authority of *Powell*. The Court therefore finds that Lee's due process claim (like all other claims set forth in the Complaint) is properly dismissed as time-barred.

### B. *Merits Issues.*

As demonstrated by the foregoing discussion, all of the claims asserted in Lee's § 1983 Complaint are time-barred; therefore, defendants' Motion to Dismiss is properly granted on that basis alone. Even if these claims were timely, however, dismissal would remain proper on the merits pursuant to Rule 12(b)(6) because Lee's Complaint fails to state any claims to relief that are plausible on their face.

### 1. *Eighth Amendment Claim as to Midazolam.*

The Supreme Court has explained that an inmate bringing an Eighth Amendment method-of-execution challenge must establish (i) "that the State's lethal injection protocol creates a demonstrated risk of severe pain," and (ii) "that the risk is substantial when compared to the known and available alternatives." *Glossip v. Gross*, --- U.S. ----, 135 S.Ct. 2726, 2737, 192 L.Ed.2d 761 (2015) (citation omitted).[10] The latter requirement is of critical importance here. After all, *Glossip* emphasized that prisoners "cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative," but instead "must identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Id.* (citation omitted); *see also Grayson*, 2016 WL 7118393, at *6 (plaintiff's burden is "to show that there is a 'feasible,' 'readily available' alternative method of execution that would substantially reduce the risk of an unconstitutional level of pain as required by the second prong of *Glossip*").

Lee acknowledges – as he must – this pleading burden; however, he insists that the Complaint "plausibly alleges that there are multiple alternatives to the State's protocol that are available and that would reduce the risk of severe pain." (Doc. 21, at 16.) In the Complaint, Lee alleges in conclusory terms that "[t]he State could and should employ any number of readily available alternatives to its current three-drug lethal injection protocol." (Doc. 1, ¶ 79.) Unfortunately, the pleading is woefully short on particulars. The first "readily available alternative" identified by Lee's Complaint is "an individualized patient assessment to determine appropriate anesthetic agents based on inmate's personal and medical history followed by roncuronium bromide and potassium chloride." (*Id.*) This "alternative" is devoid of any specific information, and does not plausibly allege that any feasible, readily implemented, alternative anesthetic exists (in lieu of midazolam) for the first drug of the protocol. Merely saying "we'll

---

[10] Significantly, a plaintiff such as Lee must satisfy these requirements at the pleadings stage. *See Glossip*, 135 S.Ct. at 2739 ("the Eighth Amendment requires a prisoner to **plead and prove** a known and available alternative") (emphasis added); *Brooks*, 810 F.3d at 819 ("As the Supreme Court made abundantly clear in *Glossip* itself, the burden rests with the claimant to 'plead and prove' both prongs of the test."). And under a Rule 12(b)(6) *Twombly*-style plausibility analysis, it is not enough to plead the claim in skeletal form, with the intention of fleshing out essential factual details sometime later.

talk about it and figure something out on an inmate-by-inmate basis" falls far short of satisfying Lee's burden under applicable law of pleading a "known and available alternative."

The only other "alternative" identified in the Complaint is the possibility of "a single-drug protocol, in which a lethal dose of anesthetic is administered." (*Id.*, ¶ 80.) Lee pleads just one drug that might be suitable for such a single-drug protocol, to-wit: pentobarbital. (*Id.*, ¶ 82 ("There are a number of different drugs available to states that employ single-drug protocols. One is pentobarbital ....").) Of course, pentobarbital is the anesthetic that Alabama used in its three-drug protocol until September 2014, when the State substituted midazolam for it because pentobarbital was no longer available.[11] The Eleventh Circuit has repeatedly acknowledged that pentobarbital is presently unavailable to the Alabama Department of Corrections for use in lethal injections. *See, e.g., Brooks*, 810 F.3d at 819-20 ("[I]n more recent filings, the ADOC has said that it has been unable to procure pentobarbital and that it does not have a source for pentobarbital. … Brooks has neither shown a substantial likelihood that there is now a source for pentobarbital that would sell it to the ADOC for use in executions, nor that an execution protocol involving this drug would be readily implementable by the ADOC.").[12]

It is not enough at the pleadings stage for Lee to make a conclusory allegation in his Complaint that "pentobarbital is readily available for use in executions in Alabama." (Doc. 1, ¶ 83.) Under *Glossip*, Lee must plead that the subject drug is both feasible and readily available.

---

[11] The Supreme Court has summarized the facts underlying these developments as follows: "Before long, however, pentobarbital also became unavailable. Anti-death-penalty advocates lobbied the Danish manufacturer of the drug to stop selling it for use in executions. … That manufacturer opposed the death penalty and took steps to block the shipment of pentobarbital for use in executions in the United States." *Glossip*, 135 S.Ct. at 2733.

[12] *See also Arthur v. Commissioner, Alabama Dep't of Corrections*, 840 F.3d 1268, 1301 (11th Cir. 2016) ("the district court's factual finding that pentobarbital was not available to the ADOC for use in executions was not clearly erroneous," given undisputed evidence that "ADOC's supply of commercially manufactured pentobarbital expired in November 2013" and dearth of evidence that any source was willing to compound pentobarbital for the ADOC); *Gissendaner v. Commissioner, Georgia Dep't of Corrections*, 803 F.3d 565, 569 (11th Cir. 2015) (recognizing that "opponents to capital punishment have made [pentobarbital] largely unavailable through open channels"); *Grayson*, 2016 WL 7118393, at *6 ("As this Court has noted many times, and the Supreme Court reiterated in *Glossip*, both pentobarbital and sodium thiopental are unavailable for use in executions as a result of the advocacy of death penalty opponents.").

He cannot advance to discovery and an evidentiary hearing simply by alleging in blanket terms that pentobarbital is readily available, when the Eleventh Circuit "has noted many times" that pentobarbital is now "unavailable for use in executions" in Alabama. *Grayson*, 2016 WL 7118393, at *6. Rather, Lee must come forward with additional factual allegations or evidence to support his claim; otherwise, his bare allegation that pentobarbital is readily available for Alabama executions is insufficient on its face to withstand Rule 12(b)(6) plausibility review. To be clear, this burden of pleading and proof rests with Lee, and the State need not plead or prove anything as to pentobarbital availability or lack thereof.[13]

In an effort to meet this burden, Lee pleads in his Complaint that (i) pentobarbital "has also been used in dozens of single-drug executions [in other states] in the United States since January 1, 2014" (doc. 1, ¶ 82); and (ii) "[c]ompounding pharmacists have expressed their willingness to prepare pentobarbital for lethal injection" (*id.*, ¶ 83). Neither allegation is sufficient to satisfy the "feasible" and "readily implemented" test under *Glossip*. Indeed, the Eleventh Circuit has rejected these types of allegations (even if backed by supporting evidence) as being insufficient to satisfy the *Glossip* test. *See, e.g., Arthur v. Commissioner, Alabama Dep't of Corrections*, 840 F.3d 1268, 1302 (11th Cir. 2016) ("We expressly hold that the fact that other states in the past have procured a compounded drug and pharmacies in Alabama have the skills to compound the drug does not make it available to the ADOC for use in lethal injections in executions."); *Brooks*, 810 F.3d at 819 (where inmate shows that other states have used pentobarbital to execute inmates in a single-drug protocol, "the fact that the drug was available in those states at some point over the past two years does not, without more, make it likely that it is available to Alabama now").[14]

---

[13] *See Arthur*, 840 F.3d at 1303 ("Nothing in *Glossip* changed the fact that it is not the state's burden to plead and prove that it cannot acquire the drug. … The State need not make any showing because it is Arthur's burden, not the State's, to plead and prove both a known and available alternative method of execution and that such alternative method significantly reduces a substantial risk of severe pain.") (citation, footnote and internal quotation marks omitted); *Brooks*, 810 F.3d at 820 ("it is not the state's burden to plead and prove that it cannot acquire the drug").

[14] The only "facts" identified in Lee's Complaint to support his allegation that compounding pharmacists are willing and able to prepare pentobarbital for lethal injection in Alabama consist of two unvarnished citations to the deposition of Daniel Buffington taken more than a year ago in another matter. (Doc. 1, ¶ 83 & fn. 6-7.) Lee does not even furnish the Court (Continued)

To recap the analysis, in order to plead a plausible Eighth Amendment claim based on Alabama's use of midazolam in a three-drug lethal injection protocol, Lee is required to plead that there is a feasible, readily available alternative method of execution that would substantially reduce the risk of an unconstitutional level of pain. The only specific alternative identified in Lee's Complaint is a switch to a single-drug protocol using pentobarbital. However, the Eleventh Circuit has recognized on multiple occasions in the last two years that pentobarbital is not available for use in executions in Alabama. In order to satisfy his pleading burden and proceed to discovery and an evidentiary hearing, Lee was required to come forward with allegations tending to show new or different facts materially distinguishable from those in other

---

with the cited excerpts of that deposition. The threshold problem with these allegations is that, as one district court has already determined upon review of Buffington's deposition testimony, they both mischaracterize Buffington's actual testimony and are too vague and speculative to satisfy Lee's pleading burden. *See Arthur v. Dunn*, 195 F. Supp.3d 1257, 1277 (M.D. Ala. 2016) (noting that Buffington himself had contacted 15 pharmacists, none of whom "were able and willing to supply compounded pentobarbital for use in lethal injections to the ADOC" or even "to share their names and contact information with the ADOC," and that the underlying testimony "is speculative as to compounded pentobarbital's availability to the ADOC"). Moreover, these allegations run headlong into – and do not come close to rebutting – specific facts found in another matter last year that "[t]he ADOC has attempted to obtain compounded pentobarbital for use in executions from departments of corrections in at least four states, … but those efforts were unsuccessful;" "[t]he ADOC has contacted all of the accredited compounding pharmacies in Alabama to ascertain whether any of these pharmacies would be willing and able to provide compounded pentobarbital to the ADOC, but those efforts have been unsuccessful;" and "Pentobarbital is not feasible and readily implemented as an execution drug in Alabama, nor is it readily available to the ADOC, either compounded or commercially." *Arthur v. Dunn*, 2016 WL 1551475, *8 (M.D. Ala. Apr. 15, 2016). That same court reasoned that "[p]roof that another state has procured it, that with effort it can be compounded (maybe by a willing Alabama compounding pharmacy but maybe not), and indications on the internet that a supplier offers to sell the active ingredients, do not prove a feasible and readily available product. At best, it proves a 'maybe.'" *Id.* at *9. Under these circumstances and given this context to the Complaint's cursory citations to the Buffington deposition, for Lee to offer a wave of his hand and a vague statement that some compounding pharmacist somewhere might be willing and able to prepare pentobarbital for lethal injection in Alabama falls well short of satisfying his burden of pleading and proving a feasible, readily implemented alternative. *See Arthur*, 840 F.3d at 1302 ("The evidentiary burden on Arthur is to show that there is <u>now</u> a source for pentobarbital <u>that would sell it to the ADOC</u> for use in executions.") (citation omitted).

cases in which the appellate court has deemed pentobarbital to be unavailable.[15] He has not done so. To be sure, he cited a few stray lines from a deposition taken in another matter last year to assert that compounding pharmacists know how to make pentobarbital; however, he ignored the fact that the same witness later indicated that he had contacted more than a dozen pharmacists, none of whom were willing to supply compounded phenobarbital for executions in Alabama. This "fact" in the Complaint is speculative to the extreme, and falls well short (even at the pleadings stage) of alleging a plausible claim that a single-drug pentobarbital protocol is a feasible, readily implemented alternative. Thus, even if this claim were timely (and it is not), dismissal would remain appropriate because Lee has failed to state a plausible claim for relief.

### 2. *Eighth Amendment Claim as to Consciousness Assessment.*

As noted, embedded in Lee's Eighth Amendment cause of action relating to the State's substitution of midazolam for pentobarbital is a claim about "[t]he State's lack of an effective consciousness check." (Doc. 1, ¶ 89.) Assuming that Lee intends to claim that Alabama's consciousness assessment violates his Eighth Amendment rights, and assuming that claim to be timely presented, he still must plead and prove a known and available alternative to comply with *Glossip*. This he has not done.

Again, the Supreme Court requires a plaintiff in Lee's position to "identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Glossip*, 135 S.Ct. at 2737 (citation omitted). Lee must plead and prove that his proposed alternative "execution protocol … would be readily implementable by the ADOC." *Brooks*, 810 F.3d at 820.[16] The Complaint does none of this. Instead, it simply alleges that

---

[15] In this respect, the analysis runs parallel to the "substantial change" analysis set forth in the limitations analysis, *supra*. If Lee contends that midazolam is a substantial change to Alabama's protocol, then he must plead specific facts to distinguish his case from Eleventh Circuit decisions concluding otherwise. The same goes for Lee's allegation that pentobarbital is readily available for lethal injections in Alabama today. The Eleventh Circuit has concluded otherwise, so Lee must identify new or different facts to distinguish this case.

[16] The Eleventh Circuit's application of this requirement in *Gissendaner v. Commissioner, Georgia Dep't of Corrections*, 779 F.3d 1275 (11th Cir. 2015), is instructive. In that case, the plaintiff alleged that "Georgia's protocol does not ensure that the IV Team is qualified to establish reliable intravenous access for a prisoner like her – one who is female, obese, and at risk for obstructive sleep apnea." *Id.* at 1279. The Eleventh Circuit dismissed this claim because "[t]he allegations of the complaint are totally bereft of … an alternative method of (Continued)

"[t]he State also could employ readily available alternatives to its current consciousness assessment which would replace the meager pinch the State currently employs with pinches that apply much more pressure." (Doc. 1, ¶ 84.) Lee does not indicate with any specificity what alternative consciousness assessment he is proposing, what the procedure would be, how the State would implement it, or why it would significantly reduce a substantial risk of severe pain. His cursory allegation in the Complaint that "readily available alternatives" exist does not satisfy threshold burdens of pleading and proof under *Glossip* and its progeny; therefore, this claim would fail on the merits even if it were not time-barred.[17]

### 3. *Equal Protection Claim.*

In his Second Cause of Action, Lee alleges that the State's lethal injection protocol violates his right to equal protection because (i) "inmates … subject to the new three-drug

---

establishing intravenous access that would substantially reduce the risks she identifies based on her gender, obesity, and possible sleep apnea." *Id.* at 1283. Thus, *Gissendaner* demonstrates that it is not sufficient for a § 1983 plaintiff to identify a perceived defect in a state's execution protocol; rather, the pleading must also set forth an alternative that would substantially reduce the identified risks.

[17] More fundamentally, the Court recognizes case authorities that may be construed as lending support to the proposition that the U.S. Constitution does not require a consciousness assessment at all. *See, e.g., Baze v. Rees*, 553 U.S. 35, 59-61, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (where petitioners proposed "supplementary procedures" to be used "in assessing the level of the prisoner's unconsciousness," questioning whether such procedures "are necessary to avoid a substantial risk of suffering" and opining that "an inmate cannot succeed on an Eighth Amendment claim simply by showing one more step the State could take as a failsafe for other, independently adequate measures"); *Arthur*, 2015 WL 1551475, at *22 ("The Eighth Amendment does not require that such medical training or standards or procedures be employed in a consciousness assessment during an execution, nor is there a constitutional requirement that a state's execution protocol include a consciousness assessment at all."). In November 2016, the Eleventh Circuit elected to "leave for another day the question of whether an additional safeguard such as Alabama's consciousness assessment is constitutionally required under the Eighth Amendment." *Arthur*, 840 F.3d at 1314. However, the *Arthur* panel also observed that, "[t]o satisfy Arthur, all ADOC execution team members must pinch inmates with approximately identical force and pinch as hard as they can because this is the standard used in a medical setting. But this is not what the Constitution requires." *Id.* at 1313. Lee's proposed alternative is even more amorphous and ill-defined than that deemed inadequate in *Arthur*. He has not identified an alternative consciousness assessment procedure, much less offered any plausible allegations that the Eighth Amendment requires a more rigorous consciousness assessment with those particular attributes.

-16-

protocol are substantially more likely to feel the painful effects of the second and third drugs in the protocol than inmates executed under Alabama's prior three-drug protocols;" and (ii) "Mr. Lee's personal and medical history substantially increases the risk that he will experience the painful effects of the second and third drugs in the protocol than other inmates listed under Alabama's new three-drug protocol." (Doc. 1, ¶¶ 98-99.)

In this context, "[t]o state an equal protection claim, [Lee] must show that the State will treat him disparately from other similarly situated persons." *DeYoung v. Owens*, 646 F.3d 1319, 1327 (11th Cir. 2011). The State correctly observes that Lee has failed to plead a plausible claim of disparate treatment in the implementation of Alabama's three-drug lethal injection protocol. The Complaint does not dispute that, pursuant to this protocol, all Alabama death row inmates facing execution in the future will be subject to the same sequence of drugs, the same procedures, and the same safeguards in the execution process. There is simply no factual basis pleaded in the Complaint to support a finding of disparate treatment.[18] Accordingly, this claim is properly dismissed on the merits for want of any plausible allegation in the Complaint that the State will treat Lee disparately from other similarly situated persons, which is a cornerstone of an equal protection claim.[19]

---

[18] *See, e.g., Ferguson v. Warden, Florida State Prison*, 493 Fed.Appx. 22, 26 (11th Cir. Oct. 18, 2012) ("Ferguson fails to assert that any of the alleged deficiencies will result in disparate treatment from other death row inmates. Under Florida's 2012 protocol, all death row inmates facing execution will be subject to the same sequence of drugs, the same procedures, and the same safeguards in the execution process. Ferguson has presented no evidence to substantiate his claims of disparate treatment.").

[19] In briefing the Motion to Dismiss, Lee contends that he has adequately pleaded this element because the State's execution protocol "treats him differently from similarly-situated inmates who were subject to Alabama's previous three-drug protocol." (Doc. 21, at 22.) This argument defies logic. Lee is apparently comparing himself to inmates executed by the State of Alabama prior to 2014, under a now-superseded execution protocol. But those individuals would not be "similarly situated" to Lee for equal protection purposes for the simple, obvious reason that they were executed when a different execution protocol was in effect in Alabama. Under Lee's theory, an equal protection violation would arise whenever the State altered its execution protocol or practices in any way, because the inmate could then argue that he or she was not being treated in identical fashion to inmates who were executed in the past. That is not how equal protection works. *See generally Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007) ("[W]e are obliged to apply the 'similarly situated' requirement with rigor. Different treatment of dissimilarly situated persons does not violate the equal protection clause.") (citation and internal quotation marks omitted); *Grider v. City of Auburn, Ala.*, 618 (Continued)

### *4. Due Process Claim.*

As his third and final claim, Lee's Complaint alleges that the State violated his due process rights under the Fourteenth Amendment by "refus[ing] to disclose material information about its new lethal injection protocol, including the reasons for its decision to switch to midazolam and to retain the same consciousness assessment." (Doc. 1, ¶ 105.) Even if this claim were timely asserted, the State has persuasively demonstrated that this Third Cause of Action fails to state a claim upon which relief may be granted.

Courts in this and other circuits have consistently held that inmates do not have a due process right to know the details of the execution protocol or the deliberative processes of the state in constructing such a protocol for purposes of formulating a constitutional challenge to that protocol. *See, e.g., Wellons v. Commissioner, Ga. Dep't of Corrections*, 754 F.3d 1260, 1267 (11th Cir. 2014) ("Neither the Fifth, Fourteenth, or First Amendments afford Wellons the broad right to know where, how, and by whom the lethal injection drugs will be manufactured, as well as the qualifications of the person or persons who will manufacture the drugs, and who will place the catheters.") (citations and internal quotation marks omitted).[20] In light of these extensive on-

---

F.3d 1240, 1264 (11th Cir. 2010) ("To be 'similarly situated,' the comparators must be *prima facie identical in all relevant respects*.") (citations and internal quotation marks omitted). At any rate, the State is unable to treat Lee identically to those inmates executed prior to 2014 for the simple reason that those proposed comparators were executed under a protocol that utilized pentobarbital, which (as the Eleventh Circuit has repeatedly noted) is no longer available for the ADOC to use in lethal injections.

[20] *See also Jones v. Commissioner, Ga. Dep't of Corrections*, 811 F.3d 1288, 1293 (11th Cir. 2016) ("no other circuit court has ever recognized the kind of due process right-of-access claim that Jones now asserts, and the two other circuit courts of appeal that have faced similar challenges to this kind of state secrecy law have each squarely rejected the claim twice"); *Terrell v. Bryson*, 807 F.3d 1276, 1277 (11th Cir. 2015) (summarily rejecting death-row inmate's due process claim that classification of "information about Georgia's execution protocols as a state secret violates his due process right to access information necessary to prosecute his Eighth Amendment claim"); *Powell v. Thomas*, 641 F.3d 1255, 1258 (11th Cir. 2011) (rejecting premise that inmate "has a broad Eighth Amendment right to know the details of his execution in order to ensure proper oversight and avoid uncertainty that unnecessarily creates anxiety"); *Phillips v. DeWine*, 841 F.3d 405, 420 (6th Cir. 2016) (finding no error in district court's dismissal of due process claim predicated on inmates' desire to obtain details about Ohio's execution procedures so that they might "discover and litigate non-frivolous claims," given that "federal courts have repeatedly rejected such theories"); *Zink v. Lombardi*, 783 F.3d 1089, 1109 (8th Cir. 2015) (Continued)

point authorities, the undersigned agrees with the State that Lee's due process claim is not cognizable as a matter of law, and that it is therefore properly dismissed pursuant to Rule 12(b)(6).

### III. Conclusion.

For all of the foregoing reasons, Defendants' Motion to Dismiss (doc. 19) is **granted** pursuant to Rule 12(b)(6), Fed.R.Civ.P. The Complaint is **dismissed with prejudice** because it is time-barred on its face and because it otherwise fails to state a claim upon which relief may be granted. A separate judgment will enter.

DONE and ORDERED this 24th day of April, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

(rejecting prisoners' due process claim based on their attempts "to discover information about the State's lethal-injection protocol in order to determine whether the protocol violates the Eighth Amendment"); *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir.2013) ("There is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on Sepulvado by withholding the details of its execution protocol."); *Hunt*, 2015 WL 1198688, at*3 n.1 (even if inmate's First and Fourteenth Amendment secrecy challenges were not time-barred, "those claims are still due to be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted" pursuant to *Wellons*).